**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 16-cv-02899-CMA

MICHAEL S. RICHARDS,

      Plaintiff,

v.

NANCY A. BERRYHILL, acting Commissioner of Social Security,

      Defendant.

---

### ORDER AFFIRMING DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS

---

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Michael Richards' ("Plaintiff") application for disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff argues that the administrative law judge's ("ALJ") determination that Plaintiff is not entitled to disability benefits amounts to reversible legal error for several reasons: (1) the ALJ should have found that Plaintiff's anxiety and depression are severe impairments; (2) the ALJ's determination that Plaintiff's impairments do not meet and are not medically equivalent to a listed impairment was just "one boilerplate statement"; (3) in assessing Plaintiff's residual functional capacity, the ALJ erred by determining that medical evidence conflicted with Plaintiff's subjective statements; (4) the ALJ did not understand the medical evidence; (5) the ALJ did not properly weight medical opinion

evidence; and (6) the ALJ did not consider all proper evidence in finding that Plaintiff could perform his past relevant work.  (Doc. # 22.)

For the reasons set forth below, the Court affirms the decision of the Commissioner to deny Plaintiff's application for disability benefits.

## I.   **BACKGROUND**

Plaintiff, born on April 1, 1963, was almost fifty years old on February 17, 2013, the alleged date of the onset of his disability.  (AR at 57–58.)[1]  For the five years before this alleged onset of disability, Plaintiff worked as a delivery driver for a pharmacy, delivering prescription medications to homebound patients.  (AR at 199–200.)  Plaintiff had previously processed customer orders and managed projects for telecom companies.  (AR at 199–202.)

On August 27, 2013, Plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34.  (AR at 135–36.)  Plaintiff alleged that following the onset of disability on February 17, 2013, he stopped working on July 24, 2013, due to cardiac heart failure.  (AR at 175, 181.)  According to Plaintiff, he needed his wife's assistance and had to rest to talk, dress, and shower, and became "very fatigued and short of breath with any activity."  (AR at 228.)

Plaintiff's application for disability benefits was denied on March 14, 2014, because the Social Security Administration determined Plaintiff was able to perform past relevant work.  (AR at 73.)  Plaintiff requested a hearing before an ALJ on March 26, 2015.  (AR at 76.)

---

[1] The Court refers and cites to the Administrative Record in this matter, located at Doc. # 17, as "AR."

Plaintiff, with the assistance of counsel, appeared before ALJ Lowell Fortune on April 30, 2015. (AR at 33–55.) An impartial vocational expert, Martin Rauer, also appeared at the hearing. (*Id.*) At the beginning of the hearing, Plaintiff amended the alleged onset date of his disability to July 3, 2013. (AR at 35.)

Plaintiff explained at the hearing that he had not worked since the alleged onset date "[p]rimarily because of shortness of breath, fatigue, and headaches." (AR at 40.) According to Plaintiff, beginning in February 2013, he was treated three times over six months for pneumonia, which "actually turned out to be congestive heart failure." (AR at 45.) He experienced "severe heart failure" in July 2013, and had open-heart surgery in August 2013. (AR at 52.) As a result of the "heart disease and the phrenic nerve being cut during the surgery," he claims to be short of breath when he walks and carries on conversations. (AR at 943–45.)[2] Plaintiff added that "anxiety came on shortly after [his] heart surgery." (AR at 52.) Plaintiff also complained of migraines and headaches, which he attributed to "two traumatic brain injuries that [he] received in auto accidents" and related "neck and nerve damage." (AR at 48.) At his counsel's request, Plaintiff estimated that he experiences headaches four times per week and a migraine once per week. (AR at 943.) Finally, Plaintiff answered his counsel's question about psychiatric treatment by describing that he experiences "sadness [and] despair" and has depression, which got "significantly worse" since he was diagnosed with heart failure. (AR at 947, 950.)

---

[2] Pages 941–60 of the Administrative Record are found at Doc. # 21. These pages were added to the record as a supplemental filing approximately one month after the record was first filed.

On June 18, 2015, the ALJ issued a written decision, in which he concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (AR at 12–32.)  The ALJ concluded that Plaintiff is capable of performing past relevant work as a customer order clerk or project manager and thus did not qualify for disability benefits.  (AR at 27.)  On July 27, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR at 8.)  On September 29, 2016, the Appeals Council denied Plaintiff's request for review.  (AR at 1–7.)  When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner.  *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff initiated the instant action on November 29, 2016.  (Doc. # 1.)

## II.   <u>STANDARD OF REVIEW</u>

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards."  *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  First, the Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938).  "Substantial evidence is more than a scintilla, but less than a preponderance . . . ."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Second, in addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). Harmless error exists where it is "inconceivable" that a different

administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

## III.   ANALYSIS

To determine whether a claimant is disabled as defined in 20 C.F.R. § 404.1505, the Social Security Administration has established a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987). If a determination is made at any of the steps that the claimant is or is not disabled, "evaluation under a subsequent step is not necessary." *Williams v. Bowens*, 844 F.2d 748, 750 (10th Cir. 1988).

Plaintiff argues that the ALJ erred in six ways. (Doc. # 22.) The Court addresses each in turn and concludes that reversal is not warranted.

## A.   WHETHER PLAINTIFF'S ANXIETY AND DEPRESSION ARE MEDICALLY DETERMINABLE, SEVERE IMPAIRMENTS

The second step of the five-step evaluation requires the decision maker to determine "whether the claimant has a medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; *see* 20 C.F.R. § 404.1520(a)(4)(ii). That determination is controlled by the severity regulations, 20 C.F.R. §§ 404.1520(c), 416.920, which establish two regulatory requirements. First, the complained-of condition must be "medically determinable." A "medically determinable" impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic technique." 20 C.F.R. § 404.1521. Second, the condition must be "severe." A "severe impairment" is one that

"significantly limits [the claimant's] physical or mental ability to do basic work activities."
20 C.F.R. § 404.1520(c); *see also Yuckert*, 482 U.S. at 141.

In this case, the ALJ determined that Plaintiff has the following medically determinable, severe impairments: "chronic heart disease; pericarditis, status post surgery; unilateral diaphragm paralysis; sleep apnea; asthma; and migraine headaches." (AR at 14.)  The ALJ concluded that Plaintiff's alleged "depressive disorder" and "anxiety disorder" do "not satisfy both regulatory requirements" and, therefore, he did not identify Plaintiff's alleged depression and anxiety as qualifying impairments.  (AR at 15.)

Plaintiff argues on appeal that the ALJ erred by not including depression and anxiety as medically determinable, severe impairments.  (Doc. # 22 at 1.)  Plaintiff contends that the record contradicts the ALJ's determination because "[Plaintiff's] treatment providers . . . show a longitudinal treatment record for Anxiety and Depression, beginning . . . in 2012."  (*Id.*)  Plaintiff's "depression and anxiety are severe impairments," he asserts, because the conditions "have more than a minimal effect on his functioning." (*Id.* at 2.)  To support this assertion, Plaintiff cites to a consultation report from July 24, 2013, in which the authoring nurse practitioner included "depression post 2 [motor vehicle crashes]" in Plaintiff's medical history.  (*Id.*) (citing AR at 343).

The Court concludes that there is substantial evidence in the record supporting the ALJ's finding at the second step that Plaintiff's alleged depression and anxiety are not medically determinable, severe impairments.  *See* (AR at 15.)  In regard to Plaintiff's anxiety, the ALJ concluded that the condition "is not medically determinable" because Plaintiff "has never been diagnosed with anxiety;" specifically, "no such diagnosis was

made by Dr. Huff," Plaintiff's sole mental health provider.  (*Id.*)  The ALJ therefore
reasoned that because Plaintiff's anxiety was not "demonstrable by medically acceptable
clinical and laboratory diagnostic techniques," it was not medically determinable.  (*Id.*);
*see* 20 C.F.R. § 404.1521.  Substantial evidence supports the ALJ's analysis.  Dr. Huff
did not diagnose Plaintiff with anxiety; he only noted that Plaintiff complained of feeling
anxious.  (AR at 613–17; 917–21.)  Plaintiff's subjective complaints do not establish that
Plaintiff's anxiety is medically determinable.  Moreover, Plaintiff does not cite to any
evidence in the record which establishes a **diagnosis** of anxiety by a medically
acceptable clinical and laboratory diagnostic technique.  *See generally* (Doc. ## 22, 24.)
Providers' notes of Plaintiff's subjective statements about his symptoms do not suffice.
*See, e.g.*, (AR at 762.)

Regarding Plaintiff's depression, the ALJ concluded that it is "not severe" and
"does not impose more than a minimal effect on [Plaintiff's] ability to perform basic work
functions."  (AR at 15); *see* 20 C.F.R. § 404.1520(c).  The ALJ observed that Plaintiff
"has only received sporadic or intermittent treatment for his depression."  (*Id.*)
Substantial evidence supports the ALJ's conclusion that Plaintiff's depression is not
severe.  The record shows that Plaintiff was treated by Dr. Huff only nine times over the
course of thirteen months (July 2013 to August 2014).  (AR at 613–16, 917–21.)  Dr. Huff
wrote in his progress notes that Plaintiff's orientation was "fully intact" and his thought
process was "logical" during these visits.  (AR at 917–21.)  Moreover, other providers
noted Plaintiff exhibited a "normal" and "appropriate" mood and affect.  *E.g.*, (AR at 434,
620, 749, 889.)  The Court is not persuaded otherwise by Plaintiff's unsubstantiated

argument that the effects of depression "objectively prove more than minimal mental work-related limitations in concentration[,] persistence[,] or pace."  (Doc. # 24 at 3.)

For these reasons, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's anxiety and depression are not medically determinable, severe impairments.  Accordingly, the Court need not reach the Commissioner's alternative argument that any alleged error was harmless.  *See* (Doc. ## 23 at 9–10, 24 at 3.)

**B.**	**WHETHER THE ALJ'S CONCLUSION THAT PLAINTIFF'S IMPAIRMENTS DO NOT MEET AND ARE NOT MEDICALLY EQUIVALENT TO A LISTED IMPAIRMENT WAS AN INSUFFICIENT "BOILERPLATE STATEMENT"**

At step three of the five-step evaluation, the decision maker determines whether the claimant's impairment (or combination of impairments) "is equivalent to one of a number of listed impartments that [the Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 142; *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920.  The list of such impairments is found at Appendix 1 of 20 C.F.R. 404, Subpt. P.

In this case, the ALJ found that Plaintiff's severe impairments, considered individually and collectively, do not meet or medically equal the severity of any of the listed impairments.  (AR at 15.)  The ALJ briefly stated that none of Plaintiff's treating or examining doctors had "identified findings equivalent in severity to the criteria of any listed impairment" and that the evidence does not "show medical findings that are in [sic] the same or equivalent of those of any listed impairment."  (AR at 16.)

Plaintiff argues that the ALJ's finding amounted to "one boilerplate statement." (Doc. # 22 at 3.) Plaintiff relies on *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), in which the Tenth Circuit remanded for additional proceedings at step three of a disability benefits appeal because "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." (Doc. # 22 at 4.) "Such a bare conclusion," according to the Tenth Circuit, "is beyond meaningful judicial review." *Clifton*, 79 F.3d at 1009. The Tenth Circuit explained that the ALJ was required by 42 U.S.C. 405(b)(1) "to discuss the evidence and explain why he found that appellant was not disabled at step three." *Id*. Presumably applying *Clifton* to his own case, Plaintiff argues that the ALJ's "failure to make findings at this step is reversible and indefensible legal error." (Doc. # 22 at 4.)

The Court finds that the ALJ did err by failing "to discuss the evidence and explain why he found that [Plaintiff] was not disabled at step three." *See Clifton*, 79 F.2d at 1009 (citing 42 U.S.C. 405(b)(1)). However, the ALJ's error does not warrant reversal or a remand. *Clifton* does not require reversal where "the ALJ's factually substantiated findings at steps four and five of the evaluation process alleviates **any** concern that a claimant might have been adjudged disabled at step three." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005). Such a reading of *Clifton* "would lead to unwarranted remands needlessly prolonging administrative proceedings." *Id.*

*Fischer-Ross* is instructive. In that case, like here, the ALJ's analysis at step

three was a single sentence and did not discuss particular evidence.[3] *Id.* at 731–32.

The ALJ proceeded to steps four and five, concluding "in alternative determinations that

[the claimant] was not disabled because under step four she retained the residual

functional capacity (RFC) to perform both her past work as a cashier/checker and desk

clerk and under step five retained the RFC to perform various other clerical and office

jobs." *Id.* at 732. The Commissioner argued that remand was unnecessary because "an

ALJ's findings at other steps of the sequential process may provide a proper basis for

upholding a step three conclusion that a claimant's impairments do not meet or equal

any listed impairment." *Id*. at 733. The Tenth Circuit agreed:

> *Clifton* does not remotely suggest that findings at other steps of an ALJ's analysis
> may *never* obviate the lack of detailed findings at step three. *Clifton* sought only to
> ensure sufficient development of the administrative record and explanation of
> findings to permit meaningful review. . . . But where an ALJ provides detailed
> findings, thoroughly reviewed and upheld by the district court, that confirm
> rejection of the listings in a manner readily reviewable, requiring reversal would
> extend *Clifton* beyond its own rationale. Neither *Clifton's* letter nor spirit require a
> remand for a more thorough discussion of the listings when confirmed or
> unchallenged findings made elsewhere in the ALJ's decision confirm the step
> three determination under review.

*Id*. at 734. The Tenth Circuit then considered the ALJ's findings at steps four and five

and concluded that the detailed findings, "coupled with indisputable aspects of the

medical record, conclusively preclude[d] [the claimant's] qualification under the listings at

step three. No reasonable factfinder could conclude otherwise." *Id.* at 734–35. The

court contrasted the ALJ's thorough findings with those in *Clifton*, where the "only finding

---

[3] This Court, like the Tenth Circuit in *Fischer-Ross*, 431 F.3d at 730, encourages "ALJs to render
complete findings and conclusions at each step of the five-part process consistent with
§ 405(b)(1) of the Social Security Act."

mentioned . . . was an RFC for a 'limited range of sedentary' work." *Id*. at 734 (quoting *Clifton*, 79 F.3d at 1009). Therefore, the Tenth Circuit held that any deficiency in the ALJ's analysis at step three was harmless, and it affirmed the underlying administrative decision. *Id*.

In this case, the ALJ's explanation at step three is comparable to those in *Clifton* and *Fischer-Ross*. Turning to the ALJ's analyses of Plaintiff's residual functional capacity and of Plaintiff's past relevant work, the Court observes that the ALJ made very detailed findings, with numerous specific references to the evidence and lengthy explanations of his reasoning. *See generally* (AR at 16–27.) The ALJ's findings regarding Plaintiff's residual functional capacity and past relevant work "conclusively preclude [Plaintiff's] qualification under the listings at step three." *See Fischer-Ross*, 431 F.3d at 735. They are comparable to the findings at issue in *Fischer-Ross*—a stark contrast to the single sentence in *Clifton*.

For these reasons, the deficiency in the ALJ's analysis at step three is harmless. Reversal or remand is not warranted.

## C.  WHETHER THE ALJ WEIGHED IMPROPER FACTORS IN ASSESSING PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY

### 1.  Applicable Regulations and Rulings

Prior to steps four and five of the five-step evaluation, the decision maker must establish the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1546(c). A claimant's RFC is "the most [the claimant] can still do despite [his] [physical and mental] limitations" that result from his impairment(s) and symptoms. 20 C.F.R. § 404.1545(a)(1). Stated differently, the RFC "is an assessment of an individual's ability

12

to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.

The decision maker determines a claimant's RFC "based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), including medical history, reports of daily activities, lay evidence, recorded observations, medical source statements, and **descriptions of "symptoms**, including pain, that are reasonably attributed to a medically determinable impairment," SSR 96-8p (emphasis added).

The framework used to evaluate a claimant's symptoms, such as shortness of breath or pain, warrants further explanation. Subjective statements about pain and other symptoms are not sufficient to establish a claimant's disability. 20 C.F.R. § 404.1529(a); SSR 96-7p; SSR 96-4p. This framework has two parts: (1) the decision maker must establish that there is a "medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms," 20 C.F.R. § 404.1529(b); and (2) "[w]hen the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [his or her] symptoms," the decision maker must then "evaluate the intensity and persistence of [the claimant's] symptoms" to determine the extent to which the symptoms limit the claimant's capacity for work, 20 C.F.R. § 404.1529(c); SSR 96-7p.

At the second step, evaluating the intensity and persistence of reported symptoms, the decision maker considers "all of the available evidence from [the claimant's] medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "This evidence includes the medical data previously presented, any other objective

indications of the pain, and subjective accounts of the severity of the claimant's pain."

*Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Relevant here, the claimant's own

statements about his or her symptoms bear on this analysis:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider **whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence**, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added). Pursuant to Social Security Ruling

96-7p[4], "whenever the individual's statements about the . . . symptoms are not

substantiated by objective medical evidence, the adjudicator must make **a finding on

the credibility of the individual's statements** based on a consideration of the entire

case record." SSR 96-7p (emphasis added); *see also Luna*, 834 F.2d at 163 ("Only at

this point may the decision maker decide whether he believes the claimant's assertions

of severe pain.") "One strong indication of the credibility of an individual's statements is

their consistency." SSR 96-7p. The decision maker "must consider" factors such as

"[t]he degree to which the individual's statements are consistent with the medical signs

and laboratory findings and other information provided by medical sources," "[t]he

consistency of the individual's own statements," and "[t]he consistency of the individual's

statements with other information in the case record." *Id*. The governing regulations and

---

[4] On March 28, 2016, more than nine months after the ALJ made his findings in this case, Social Security Ruling 96-7p was superseded by Social Security Ruling 16-3p. The Court's analysis here is limited to SSR 96-7p, the ruling that was in place at the time the ALJ made his findings.

rulings identify other factors that also bear on the decision maker's evaluation of the

intensity and persistence of reported symptoms.[5]

2.   The ALJ's Findings

In this case, the ALJ concluded that Plaintiff "has the residual functional capacity

to perform light work as defined in 20 C.F.R. § 404.1567(b)[6]—except as otherwise

stated."  (AR at 16.)  The ALJ noted exceptions, including that Plaintiff "is unable to climb

ladders, scaffolds, and ropes" and should avoid exposure to "unprotected heights,

---

[5] Pursuant to 20 C.F.R. § 404.1529(c)(3), the following factors are relevant to a claimant's symptoms:
>    (i) Your daily activities;
>    (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>    (iii) Precipitating and aggravating factors;
>    (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>    (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>    (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>    (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Under Social Security Ruling 96-7p, the following factors are also relevant:
- The medical signs and laboratory findings;
- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and
- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

[6] 20 C.F.R. § 404.1567(b) describes "light work" as follows:
>    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

dangerous machinery, extreme heat, and extreme cold." (*Id.*)  The ALJ explained that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 404.1529 and SSRs 96-4p and 96-7p" and considered opinion evidence in accordance with the regulations and rulings.  (*Id.*)  The ALJ then articulated the two-part process for evaluating a claimant's symptoms, as described above.  (*Id.*)

Over the course of the following eleven pages, the ALJ applied these frameworks to Plaintiff's case.  (AR at 16–27.)  The ALJ summarized the chronology of Plaintiff's medical treatments (AR at 16–17), and then explained in great detail his analysis of Plaintiff's symptoms (AR at 17–18).  He concluded at the second step that Plaintiff's "evidence concerning the intensity, persistence, and limiting effects of these symptoms [is] not fully credible" for a number of stated reasons.  (AR at 17.)  The ALJ then addressed Plaintiff's medical records, detailing treatment records and medical opinions about Plaintiff's functional capacity.[7]  (AR at 21–27.)

3.    Analysis

Plaintiff argues that the ALJ's RFC assessment was "legal error from start to finish" because it was not supported by "specific medical facts" and because the ALJ considered inapplicable factors.  (Doc. # 22 at 4–9.)  Plaintiff asserts that the ALJ's conclusion that Plaintiff's evidence of his symptoms is not fully credible was erroneous because the ALJ wrongly considered the consistency of Plaintiff's conduct.  (*Id.* at 5–6.)

---

[7] The weighting of these various medical opinions is at issue in a later argument made by Plaintiff.  The Court discusses weighing medical opinions in greater detail there.

Plaintiff also criticizes the ALJ's consideration of other factors, including Plaintiff's daily activities, Plaintiff's exaggeration of his symptoms, and other evidence from Plaintiff's former employer. (*Id.* at 6–9.)

The Court concludes that the ALJ's findings are supported by substantial evidence and that the ALJ applied the correct legal standards. *See Pacheco*, 931 F.2d at 696. First, substantial evidence in the record supports the ALJ's finding that Plaintiff is able to perform light work. For example, Plaintiff reported in a December 8, 2013, Function Report for the Social Security Administration that he regularly took his son to and from school, prepared simple meals, fed and exercised his pets, went on errands to medical appointments and the grocery store, walked short distances, and drove a car. (AR at 213–20.) Various medical providers also noted that Plaintiff walked with a "steady gait" and without assistive devices (AR at 911) and had a "normal" gait and an improving tolerance for exercise, (AR at 608–10, 684, 803). The opinions of the state agency medical consultant, Dr. Canham, and of the consultative examiner, Dr. Fernandez, also support the ALJ's RFC finding. *See* (AR at 64–66, 652). This evidence in the record is "sufficient" and "relevant," in that "a reasonable person might deem [it] adequate to support the ultimate conclusion" regarding Plaintiff's RFC. *See Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). In short, this amounts to substantial evidence, and the Court "cannot reweigh the evidence nor substitute its judgment for that of the agency." *See id*. (citing *Jordan v. Heckler*, 835 835 F.2d 1314, 1316 (10th Cir. 1987)).

Second, the ALJ applied the correct legal standards. In evaluating Plaintiff's symptoms, such as shortness of breath, the ALJ clearly explained that he was using the

two-step framework required by the Social Security Administration's regulations and rulings, including 20 C.F.R. § 404.1529(c) and SSR 96-7p, and described above. (AR at 16.) At the second step, where the ALJ concluded that Plaintiff's evidence concerning his symptoms is "not fully credible," (AR at 17), the ALJ properly considered "all of the available evidence from [the claimant's] medical sources and nonmedical sources." *See* 20 C.F.R. § 404.1529(c)(1). Plaintiff's arguments that the ALJ considered improper factors, such as whether a claimant's conduct is consistent with his assertions and whether a claimant's evidence exaggerated the facts or magnified symptoms, fail to persuade the Court otherwise. *See* (Doc. # 22 at 5–9.) Plaintiff is correct that controlling regulations, rulings, and case law do not explicitly include "conduct" or "symptom magnification" as factors. However, the applicable regulations, rulings, and case law direct decision makers to consider "any inconsistencies in the evidence" and "any conflicts between [the claimant's] statements and the rest of the evidence," 20 C.F.R. § 404.1529(c)(4), and to make a credibility determination if there are inconsistencies, SSR 96-7p. Moreover, the Social Security Administration emphasizes that the consistency of a claimant's statements is a "strong" indicator of credibility. SSR 96-7p. In the Court's view, the ALJ was properly considering inconsistencies between Plaintiff's statements and other facts in the record to make a credibility determination when he described Plaintiff's conduct and symptom magnification. *See* (AR at 17–18.) The Court therefore concludes that the ALJ applied the correct legal standards and gave specific, legitimate reasons linked to specific evidence in the record in doing so. *See generally Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1045 (D. Colo. Feb. 25, 2015) (holding that

an ALJ's credibility determination was entitled to "substantial deference" where the ALJ "gave clear, specific, legitimate reasons linked to specific evidence in the record for his credibility assessment.")

## D.      WHETHER THE ALJ MISUNDERSTOOD THE MEDICAL EVIDENCE

Plaintiff briefly argues that the ALJ's discussion of his medical evidence is problematic because "the ALJ did not understand . . . that [Plaintiff] has two heart conditions contributing to his heart failure: constrictive pericarditis and restrictive cardiomyopathy."  (Doc. # 22 at 9–10.)  Plaintiff does not specify where the ALJ failed to consider these two heart conditions, nor does he describe how the ALJ's failure to do so affected the ALJ's findings.

The Court finds no reversible error in the ALJ's consideration of Plaintiff's heart conditions.  Though the ALJ did not include restrictive cardiomyopathy in the listing of Plaintiff's impairments, the ALJ did list chronic heart disease and pericarditis as impairments.  (AR at 14.)  The ALJ later made multiple references to both restrictive cardiomyopathy and restrictive pericarditis when he detailed Plaintiff's treatment records. (AR at 19–21.)  The Court is satisfied that the ALJ's analysis is supported by substantial evidence in the record, and it has found nothing in the record suggesting that restrictive cardiomyopathy in particular—apart from any other heart condition—caused Plaintiff unique symptoms.  Assuming arguendo that the ALJ erred in not listing restrictive cardiomyopathy as an impairment, the failure to do so "was minor enough not to undermine confidence in the determination of this case."  *See Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993).  Any error was harmless.

**E.    WHETHER THE ALJ IMPROPERLY WEIGHED MEDICAL OPINION EVIDENCE**

1.    Applicable Regulations and Rulings

Regardless of the source, the ALJ must evaluate every medical opinion.  20

C.F.R. § 404.1527(c) (2015).  The regulation provides six factors that bear on deciding

the weight given to any medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301; *see also* 20 C.F.R. § 404.1527(c) (2015).  The regulations

and rulings also provide more specific guidance as to treating sources and nonexamining

sources.  20 C.F.R. § 404.1527 (2015).

According to the treating physician rule in place at the time of Plaintiff's

administrative appeal, the Social Security Administration generally gives controlling

weight[8] to medical opinions from treating sources.[9]  20 C.F.R. § 404.1527(c)(2) (2015);

SSR 96-2p.  "In deciding how much weight to give a treating source opinion, an ALJ

must first determine whether the opinion qualifies for 'controlling weight.'"  *Watkins v.*

*Bernhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  To make this determination, the ALJ

must consider if the opinion is (1) "well-supported by medically acceptable clinical and

---

[8] A medical opinion given controlling weight must be adopted.  SSR 96-2p.
[9] The pertinent regulation, 20 C.F.R. § 404.1527 (2015), was amended and the related ruling, SSR 96-2p, was rescinded as of March 27, 2017.  The treating physician rule is no longer in place.  *See* 20 C.F.R. § 404.1527 (2017).  However, in this case, the ALJ made his findings in 2015.  The Court therefore considers the regulation and ruling in place in 2015.

laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2) (2015); *see also Watkins*, 350 F.3d at 1300; *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). If the opinion is "deficient in either of these respects," then it is not entitled to controlling weight. *Watkins*, 350 F.3d at 1300; *see also* SSR 96-2p; *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).

If a treating physician's opinion is not entitled to controlling weight, is it "still entitled to deference" and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 (2015) and listed above. SSR 96-2p; *see also Langley*, 373 F.3d at 1119; *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). An ALJ must give "good reasons in [the] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2) (2015); *Watkins*, 350 F.3d at 1300. The ALJ's findings "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p; *Watkins*, 350 F.3d at 1300.

The regulation in place at the time of Plaintiff's administrative appeal also delineates rules applicable to "[s]tate agency medical and psychological consultants, other program physicians and psychologists, and medical experts [the Social Security Administration] consult[s] in connection with [ALJ] hearings and Appeals Council review." 20 C.F.R. § 404.1527(e) (2015). Relevant here, it explains that "[s]tate agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security

disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i) (2015). The regulation thus requires an ALJ to "consider opinions of state agency medical or psychological consultants . . . as opinion evidence," *id.*, "using the relevant factors in [20 C.F.R. § 404.1527(a)–(d)]," 20 C.F.R. § 404.1527(e)(2)(ii) (2015).

##   2.   The ALJ's Findings

The ALJ first determined that Plaintiff's treating sources' opinions are not entitled to controlling weight. (AR at 21–22.) The ALJ explained that according to 20 C.F.R. § 404.1527 (2015), in order for a treating source's opinions to receive controlling weight, they must satisfy the regulatory requirements—including the requirement that "they must be 'consistent' with 'the other substantial evidence' in the record."[10] (AR at 21.) The ALJ compared the treating sources' opinions about Plaintiff's functional capacity to those of the nontreating sources, the state agency medical consultant and the consultative examiner. (AR at 22.) He concluded that the nontreating sources' opinions constitute "substantial evidence" and that the treating source opinions "are not 'consistent' with [this] 'other substantial evidence' in the record." (*Id.*) "Consequently," he found "that the treating source opinions are not entitled to receive controlling weight." (*Id.*)

The ALJ then addressed the relative weight he gave to the opinions of all the medical sources, including treating sources. (*Id.* at 22–27.) He explained that in assigning comparative weights, he considered "the applicable regulatory factors and the circumstances surrounding the opinions." (*Id.* at 22.) After a thorough analysis of each source, the ALJ summarized:

---

[10] The ALJ noted in a footnote that "[t]he actual wording [of the regulation, 20 C.F.R. § 404.1527(c)(2) (2015),] is 'not inconsistent.'" (AR at 21 n.4.)

> I have assigned that relative, overall weight to the medical source opinions as follows. I give more weight to the opinions of Dr. Canham [the state agency medical consultant]. I give some weight to the opinions of Dr. Fernandez [the state's consultative examiner]. I give less weight to the opinions of Dr. Young, Ms. Lease, and Dr. Janata [the treating sources].

(*Id*. at 27.) The ALJ stated that his weightings are "supported by the regulatory factors . . . , as well as the objective medical evidence in the record." (*Id*.)

3.   Analysis

   *a. Controlling weight to treating sources' opinions*

Plaintiff faults the ALJ for declining to give his treating sources' opinions controlling weight. (Doc. # 22 at 10–11.) Plaintiff asserts that the ALJ's analysis was "boilerplate," (*id*. at 10), and that it was "legal error to fail to attribute controlling weight to uncontradicted treating specialists' opinions" (Doc. # 24 at 8). The Court disagrees. The ALJ's conclusion that the treating sources' opinions do not merit controlling weight is supported by substantial evidence, and the ALJ applied the correct legal standards. *See Pacheco*, 931 F.2d at 696.

First, there is substantial evidence supporting the ALJ's determination that the treating source opinions are not consistent with "the other substantial evidence" in the record. *See* 20 C.F.R. § 404.1527(c)(2) (2015); SSR 96-2p. Substantial evidence, as used in the Social Security Act, is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

Plaintiff's treating sources opined at various points in the record that Plaintiff's functional capacity was very limited. *E.g.*, (AR at 701–02, 933–35.) However, Dr.

Canham, the state agency medical consultant, and Dr. Fernandez, the consultative examiner, concluded otherwise; they identified fewer limitations. Dr. Canham reviewed Dr. Fernandez's report and all medical records that Plaintiff had submitted (AR at 58–62) and determined that Plaintiff could stand or walk for four hours and sit for six hours in a normal workday, for example (AR at 64). Dr. Fernandez asked Plaintiff about his medical complaints and his daily activities, reviewed Plaintiff's medical records, and physically examined Plaintiff. (AR at 648–52.) Dr. Fernandez determined that Plaintiff could walk up to four hours slowly with rest breaks. (AR at 652.) The comprehensive reports of Dr. Canham and Dr. Fernandez are consistent with the evidence supporting the ALJ's finding that Plaintiff is able to perform light work, described above in Part C(3), and thus constitute substantial evidence. *See Perales*, 402 U.S. at 402 (holding that "a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant").

An "abundance of evidence," including the opinions of Dr. Canham and Dr. Fernandez, *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), is inconsistent with the treating sources' opinions about Plaintiff's functional capacity. *Compare* (AR at 64) *with* (AR at 933). Moreover, there is no indication that the ALJ made speculative inferences from Plaintiff's medical records or improperly relied on his own credibility judgments. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Therefore, pursuant to 20 C.F.R.

§ 404.1527(c)(2) (2015) and SSR 96-2p, the treating sources' opinions do not receive controlling weight.

Second, the ALJ applied the correct legal standards: 20 C.F.R. § 404.1527(c)(2) (2015), SSR 96-2p, and related case law. As stated above, the ALJ reviewed and then applied this regulation and ruling. *See* (AR at 21–22.) The Court is not persuaded by Plaintiff's contention that the ALJ's statement that the treating sources' opinions must be "**consistent**" with other substantial evidence in the record, *see* (AR at 21) (emphasis added), is a legal error because the language of the regulation and rule is "**not inconsistent**,"[11] *see* 20 C.F.R. § 404.1527(c)(2) (2015); SSR 96-2p (emphasis added). *See* (Doc. # 22 at 10.) Plaintiff's argument assumes there is a determinative difference between "consistent" and "not inconsistent." There is not. The Tenth Circuit has used these two terms interchangeably. In *Watkins*, 350 F.3d at 1300, for example, the Tenth Circuit described the second regulatory requirement for affording controlling weight to a treating source's opinion as requiring the decision maker to "confirm that the opinion is **consistent** with other substantial evidence in the record." (Citing SSR 96-2p) (emphasis added). The Court therefore concludes the ALJ applied the correct legal standards from 20 C.F.R. § 404.1527(c)(2) (2015), SSR 96-2p, and related case law.

---

[11] SSR 96-2p states that "not inconsistent" is "a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."
    The Court notes that Dr. Canham's and Dr. Fernandez's opinions directly contradict or conflict with the treating sources' opinions.

###### b. *Relative weight of all medical sources' opinions*

Plaintiff also contends that the ALJ's comparative weight analysis is a reversible legal error because the ALJ misapplied the six factors listed in 20 C.F.R. § 404.1527(c) (2015). (Doc. # 22 at 12–18.) The Court concludes that the ALJ applied the correct legal standards. *See Pacheco*, 931 F.2d at 696. As the Court described above, the ALJ explained that he considered the factors of 20 C.F.R. § 404.1527(c) (2015) and circumstances surrounding the opinions, "assessed the weight of the opinions of each medical source, and compared that assessment with the assessments of the other medical sources." (AR at 22.) The ALJ detailed the opinions of each medical source: (1) Dr. Canham, the state agency medical consultant; (2) Dr. Fernandez, the consultative examiner; (3) Dr. Young, who treated Plaintiff for headaches; (4) Ms. Lease, a nurse practitioner who completed a Cardiac Medical Source Statement for Plaintiff; and (5) Dr. Janata, Plaintiff's treating pulmonologist. (AR at 22–23.)

The ALJ then appropriately applied the factors listed in 20 C.F.R. § 404.1527. (AR at 23–27.) For example, the ALJ gave more weight to "the opinions of medical sources who are experts in the evaluation of Social Security . . . disability claims," in accordance with 20 C.F.R. § 404.1527(e)(2)(i). (AR at 23.) The ALJ also considered regulatory factors such as supportability, consistency, and specialization, *see* 20 C.F.R. § 404.1527(c)(3)–(5), in deciding to give more weight to the opinions of Dr. Canham and Dr. Fernandez. Similarly, in concluding that the opinions of Dr. Young, Ms. Lease, and Dr. Janata are due less weight, the ALJ considered specialization, the nature of the treating relationships, supportability, and consistency—all regulatory factors. (AR at 25–

26.)  The Court therefore concludes that the ALJ applied the correct legal standards in assigning the medical opinions relative weights.

**F.      WHETHER THE ALJ FAILED TO CONSIDER ALL PROPER EVIDENCE IN FINDING THAT PLAINTIFF COULD PERFORM HIS PAST RELEVANT WORK**

At the fourth step of the sequential analysis, the relevant analysis is "whether the claimant is able to return to her past relevant work.  The burden is on the claimant to show that [his] impairment renders [him] unable to perform that work."  *Henrie v. U.S. Dep't of Health & Human Serv.*, 13 F.3d 359, 360 (10th Cir. 1993) (internal citations omitted).  To determine whether a claimant can perform his past relevant work ("PRW"), the decision maker "will ask [the claimant] for information about work [the claimant has] done in the past."  20 C.F.R. § 404.1560(b)(2).  The claimant is "the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining skill level, exertional demands, and nonexertional demands of work."  SSR 82-62.  The decision maker may also use a vocational expert ("VE") or other sources of information, such as the Department of Labor's "Dictionary of Occupational Titles."  20 C.F.R. § 404.1560(b)(2).

> A vocational expert . . . may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy . . . In addition, a vocational expert . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

*Id*.

Step four of the sequential analysis is "comprised of three phrases." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ evaluates a claimant's physical and mental RFC. *Id*. Second, the ALJ determines the physical and mental demands of the claimant's PRW. *Id*. Third, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*.; *see also Henrie*, 13 F.3d at 361. Throughout these steps, the decision maker "has an obligation to develop of a full and fair record." *Santiago v. Sullivan*, No. 90 Civ. 7171 (LLS), 1991 WL 150197, at *7 (S.D.N.Y. Aug. 1, 1991). The decision maker's conclusion "must be developed and explained fully in the disability decision." SSR 82-62.

In this matter, the ALJ concluded that Plaintiff is capable of performing PRW as a customer order clerk and as a project manager because this work "does not require the performance of work-related activities precluded by [Plaintiff's] [RFC]." (AR at 27.) The ALJ stated that he had considered Plaintiff's evidence about how each job was "actually performed" and the VE's evidence about how each job is "generally performed, according to the Dictionary of Occupational Titles." (*Id*.) The ALJ found that Plaintiff had previously performed three types of work identified in the Dictionary of Occupational Titles—customer order clerk; delivery driver; and project manager—and identified the general and actual exertion levels of each of those jobs. (*Id*.) The ALJ then recounted that at the hearing, he asked the VE a hypothetical question, assuming a claimant with Plaintiff's age, education, and RFC." (*Id*.) The ALJ described that "the VE testified that such a person would be able to perform" work as a customer order clerk and a project

manager, as those jobs are generally and actually performed."  (*Id.*)  Thus, the ALJ

decided that Plaintiff is able to perform PRW as a customer order clerk and as a project

manager.  (*Id.*)

The Court concludes that the ALJ's conclusion at step four is supported by

substantial evidence and that the ALJ applied the correct legal standards.  *See Pacheco*,

931 F.2d at 696.  The Court is not persuaded by Plaintiff's two brief arguments

otherwise.  First, Plaintiff argues that the ALJ erred at the second phase of step four by

"skip[ping] [it,] as he did not inquire about the basic mental and physical work activities of

either of [the] jobs."  (Doc. # 22 at 19.)  This factual allegation is flatly contradicted by the

record.  The ALJ asked Plaintiff several questions about the details of Plaintiff's prior

work at the hearing, as did Plaintiff's counsel.  (AR at 40–45, 942–43.)  Plaintiff also had

submitted a Work History Report, in which he detailed the physical demands of his three

previous jobs.  (AR at 199–210.)   The ALJ referenced Plaintiff's testimony "about how

each job was actually performed" in its findings.  (AR at 27.)  The Court is satisfied that

the ALJ adequately explored the physical and mental demands of Plaintiff's PRW at the

second phase of step four and that there is a substantial basis for the ALJ's findings.  *Cf.*

*Echevarria v. Sec'y of Health & Human Serv.*, 685 F.2d 751, 755–56 (2d Cir. 1982)

(holding that the ALJ failed to adequately explore a claimant's allegations); *May v.*

*Bowen*, 663 F. Supp. 388, 391 (D. Maine May 28, 1987) (holding that the ALJ failed to

make adequate findings of fact as to the physical and mental demands of a claimant's

past work).

Second, Plaintiff argues that the ALJ's RFC failed to take into account his limited speech proficiency. (Doc. # 22 at 20.) Plaintiff asserts that it is clear from the transcript of the hearing that "he . . . had trouble speaking loud enough at the hearing . . . [;] the ALJ told him to speak louder. (*Id.*) (citing AR at 36, 38–40)[12]. This is not sufficient evidence of speech difficulties, as the ALJ told Plaintiff at the beginning of the hearing that "we have some fans going on . . . they're making background noise so that means you need to keep your voice up and face me when you're talking" and later explained that the microphone in front of Plaintiff was "for the recording," not for amplification. (AR at 36.) Plaintiff also points to Ms. Lease's, the nurse practitioner, report from an office visit on October 30, 2013, that Plaintiff "struggles with hoarseness and vocal cord inflammation . . . and will be getting speech therapy." (Doc. # 22 at 20) (quoting AR at 622). However, there is also evidence in the record that suggests Plaintiff's difficulties with speech were temporary. Just four days prior to Ms. Lease's report, an examining doctor noted that the "context" of Plaintiff's hoarseness was "recent illness." (AR at 770.) More recent reports from 2014 and 2015 stated that Plaintiff was not experiencing shortness of breath or difficulties speaking. *See* (AR at 902, 928–29.) The Court is therefore satisfied that the ALJ's RFC, which did not note any speaking limitations, is supported by substantial evidence in the record.

---

[12] The Court notes that there is nothing on pages 38–40 that suggests the ALJ was having difficulty hearing Plaintiff at the hearing.

# IV.    CONCLUSION

This Court finds that the ALJ's decision was supported by substantial evidence and the ALJ committed no legal error in reaching his adverse finding as to Plaintiff' s disabilities.

Accordingly, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED.  It is FURTHER ORDERED that each party shall pay its own costs and attorneys' fees.

DATED:  November 27, 2017

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge